1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **CENTRAL DISTRICT OF CALIFORNIA**
10
11   UNITED STATES OF AMERICA,                Case No. 2:24-cr-00144-SPG-1
                        Plaintiff,
12                                            **ORDER DENYING DEFENDANT'S**
13          v.                                **MOTION TO SUPPRESS [ECF NO. 28]**

14   MARTEL MORFIN,
15                        Defendant.
16
17          Before the Court is the Motion to Suppress (ECF No. 28 ("Motion")) filed by
18   Defendant Martel Morfin ("Defendant").  The Court heard oral arguments on June 11,
19   2025.  Having considered the parties' submissions, oral arguments, the relevant law, and
20   the record in this case, the Court DENIES the Motion.
21   **I.    BACKGROUND**
22          **A.    Factual Background**
23          This case arises out of a series of armed robberies within San Fernando Valley.
24   Specifically, the Government alleges the following facts.  On December 29, 2023,
25   Defendant allegedly robbed a Burger King on December 29, 2023, a Jr. Taco Llama on
26   December 30, 2023, and a Wendill's Chicken on January 2, 2024.  *See* (ECF No. 28-1
27   ("Berretta's Report") at 2).  On January 2nd, Detective Michael Berretta of the Los Angeles
28   Police Department ("LAPD") began investigating these robberies.  His investigation

primarily entailed interviewing eyewitnesses and recovering available video surveillance. Based on the witnesses' statements, *see* (ECF Nos. 25-4, 25-5, 25-6), Detective Berretta determined that these robberies were committed by a suspect with a similar modus operandi—namely, that the suspect was a Hispanic male, wore dark clothing, covered his face with a bandana, and brandished a stainless-steel pistol as a weapon to demand money from the fast-food restaurants' cashiers. *See* (Berretta's Report at 2). During his investigation of these three robberies, Detective Berretta also learned about a robbery of a Mobil gas station occurring on January 9th and an attempted robbery of a Del Taco occurring on January 12th. *See* (*id.* at 6). He determined that the suspect from these two robberies shared the modus operandi and wore clothing similar to that of the three prior robberies.[1] *See* (*id.* at 6–7).

As to the surveillance footage, the employees at Burger King, Jr. Taco Llama, and Wendill's Chicken informed Detective Berretta that the interior cameras were not functioning during the robberies, thereby prompting Detective Berretta to recover exterior surveillance footage from the Jr. Taco Llama, the Wendill's Chicken, a Food 4 Less store near the Burger King, and two Arco gas stations—one located across the street from the Burger King and another located approximately one mile from the Burger King. *See* (ECF No. 36) (listing the relevant video surveillance exhibits). Based on his review of the surveillance footage, Detective Berretta observed a getaway vehicle arriving at and fleeing from the Burger King, Jr. Taco Llama, and Wendill's Chicken; he specifically identified a black BMW sedan as the getaway vehicle. *See* (Berretta's Report at 3). Tracing the suspect's exit route from the Burger King robbery, Detective Berretta reviewed surveillance footage from the second Arco gas station located a mile away from the Burger King. In this footage, Detective Berretta observed an individual he believed to be the Defendant who, according to Detective Berretta's investigative report, resembled the

---

[1] In particular, Detective Berretta observed that the suspect from the latter two robberies wore "shoes consistent with what [Defendant] [was] seen wearing" at an Arco gas station after the Burger King robbery. (Berretta's Report at 7).

suspect's physical appearance and wore clothing consistent with the suspect's clothing. *See* (*id.* at 4). He also observed the black BMW sedan that appeared to match the getaway vehicle shown in other surveillance clips near the robberies. *See* (*id.*).

After running the Washington license plate from Defendant's vehicle through a database, Detective Berretta retrieved Defendant's phone number. *See* (*id.* at 8). Thereafter, on January 16, 2024, Detective Berretta applied for a search warrant for Defendant's cell site location information ("CSLI"). *See generally* (ECF No. 25-7). The magistrate judge granted the application, and on January 17th, Detective Berretta received Defendant's historic and real time call data records ("CDR"). *See* (Berretta's Report at 8). Detective Berretta determined from the CDR that Defendant's phone number was serviced by cell towers "in the general area of each of the crimes on the day and at the approximate time of the crimes." (*Id.*). He also submitted the CDR to the FBI CAST department for analysis and mapping. *See* (*id.*).

That same day, Detective Berretta placed a felony want on Defendant's vehicle, *see* (*id.*), and distributed a crime alert to other police officers, *see* (ECF No. 28-5 ("Crime Alert")). The crime alert shared with law enforcement personnel the modus operandi for the robberies, Defendant's physical description, and the getaway vehicle's description while providing images of both Defendant and his alleged getaway vehicle. While traveling on Foothill Boulevard, LAPD Officers Guerrero and Cervantes observed at a Park and Ride Defendant's vehicle, which matched the black BMW shown in the crime alert, thereby prompting them to conduct a felony stop. *See* (ECF No. 28-7 ("Arrest Report") at 3). Upon the arresting officers' request, Defendant provided them with his name; the officers then ordered Defendant out of the vehicle and arrested him for the robberies. *See* (*id.* at 3–4).

While at the scene, the arresting officers searched and recovered a wallet from Defendant's person. *See* (*id.* at 4). They also searched the vehicle, recovering a stainless-steel firearm loaded with a magazine and 9mm ammunition from the floorboard behind the passenger seat. *See* (*id.*). The next day, the LAPD impounded Defendant's vehicle as

evidence and transported it to the Foothill police station. *See* (ECF No. 35-16 at 17). Additionally, on that same day, Detective Berretta conducted a search of the vehicle at the station. During the search, Detective Berretta recovered: a phone and a pair of blue and white shoes from the floorboard; an extended 9mm magazine behind the passenger seat; a pair of black shoes, two pairs of blue pants, a black shirt with the words "Snoop Dogg," a face covering, and a spent casing from the trunk area. *See* (*id.* at 4, 6).[2] Detective Berretta also completed a CHP 180 inventory form, listing other "misc[ellaneous] property [found] in the vehicle." *See* (*id.* at 16).

### B.    Procedural Background

On March 5, 2024, the Government indicted Defendant with the following counts: interference with commerce by robbery; attempted interference with commerce by robbery; using, carrying, possessing, and brandishing a firearm in furtherance of, and during and in relation to, a crime of violence; and felon in possession of a firearm and ammunition. *See* (ECF No. 1 ("Indictment")). On April 16, 2025, Defendant filed a Motion to Suppress Cell Site Location Information Warrant and Fruits Thereof Under *Franks v. Delaware* as well as this instant Motion to Suppress the Evidence.[3] As relevant here, the Government opposed this Motion (ECF No. 34 ("Opp.")), and Defendant has replied (ECF No. 37 ("Reply")).

## II.    LEGAL STANDARD

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. An officer, however, has probable cause to make a warrantless arrest when, under the totality of circumstances, an officer has knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an

---

[2] Defendant does not dispute the facts regarding the locations where the officers seized various items from his person and his vehicle.

[3] On June 4, 2025, the Court held a hearing for the *Franks* Motion; the Court denied Defendant's request to suppress the CSLI evidence, or in the alternative, conduct an evidentiary *Franks* hearing. *See* (ECF No. 45).

offense has been or is being committed by the person being arrested.  *See Beck v. Ohio,* 379 U.S. 89, 91 (1964); *see also United States v. Smith,* 790 F.2d 789, 792 (9th Cir. 1986). "The test for probable cause," the Supreme Court has cautioned, "is not reducible to precise definition or quantification." *Fla. v. Harris*, 568 U.S. 237, 243 (2013).  Notwithstanding the absence of a precise definition, probable cause is a higher standard than the reasonable suspicion required to conduct a brief investigatory stop.  *See Kansas v. Glover*, 589 U.S. 376, 380 (2020).

Absent an exception, "[s]earches and seizures that offend the Fourth Amendment are unlawful and evidence obtained as a direct or indirect result of such invasions is considered 'fruit of the poisonous tree' and is inadmissible under the exclusionary rule." *United States v. McClendon*, 713 F.3d 1211, 1215 (9th Cir. 2013) (citing *Wong Sun v. United States*, 371 U.S. 471, 484–87 (1963)).  A defendant subjected to a warrantless search and seizure may move to suppress the evidence obtained.  *See* Fed. R. Crim. P. 41(h).  Upon a defendant's motion, the Government bears the burden of showing by a preponderance of the evidence that a warrantless search falls within one of the exceptions to the warrant requirement.  *See United States v. Scott*, 705 F.3d 410, 416 (9th Cir. 2012); *see also United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

## III.   DISCUSSION

### A.   Evidentiary Hearing

As a threshold matter, Defendant's instant Motion requests that the Court suppress the fruits of his arrest and search of his vehicle, or alternatively, conduct an evidentiary hearing.  The Local Criminal Rules for the Central District of California set out "procedures [that] govern a motion to suppress." L.R. 12-1.  Specifically, Local Rule 12-1.1 states the following:

> A motion to suppress shall be supported by a declaration on behalf of the defendant, setting forth all facts then known upon which it is contended the motion should be granted. The declaration shall contain only such facts as would be admissible in evidence and shall show affirmatively that the declarant is competent to testify to the matters stated therein.

L.R. 12-1.1.

To accompany this instant Motion, defense counsel submitted a declaration on behalf of Defendant. *See* (Mot. at 34). The declaration states that, "[o]n January 17, 2025, Mr. Morfin was sitting in his parked car when he was approached by the Los Angeles Police Department. He was ordered out of the car, arrested, and police officers subsequently searched his car." (*Id.*). The Government, in response, argues that this declaration does not present a material factual dispute, such that Defendant is entitled to an evidentiary hearing. *See* (Opp. at 19). In his reply, Defendant neither addresses the Government's rebuttal nor supplements the record with another declaration. Thus, during the June 4th hearing, the Court found that the defense counsel's declaration in support of the instant Motion did not comply with Local Rule 12-1.1 because it does not set forth all facts then known upon which it is contended the motion should be granted. Nor does it otherwise establish a dispute of material fact. The Court, therefore, held that Defendant had not demonstrated that he was entitled to an evidentiary hearing on the Motion, and the record did not reflect that a hearing was warranted.

In response, Defendant objected to the Court's denial of an evidentiary hearing, broadly asserting that to do so would violate his constitutional rights. Thus, the Court allowed the parties to present supplemental briefing on the following issue: whether the Court's finding that Defendant failed to show an evidentiary hearing is warranted violates his constitutional rights. *See* (ECF No. 45).

Defendant's supplemental brief, *see* (ECF No. 46 ("Defendant's Supp. Brief")), argues that he is entitled to an evidentiary hearing for three reasons. First, he contends that the Court must conduct an evidentiary hearing because the moving papers establish a dispute of fact regarding whether there was probable cause to believe Defendant had committed a robbery. Second, Defendant argues that, if the Court does not conduct an evidentiary hearing, it may not consider Detective Berretta's declaration submitted in support of the Government's opposition to the Motion. Finally, Defendant asserts that, in light of the Federal Rules of Criminal Procedure 12 and 47, and Local Rule 12-1.1's purported inconsistency with the Federal Rules, Local Rule 12-1.1 is invalid.

The Government's supplemental opposition, *see* (ECF No. 47 ("Government's Supp. Opp.")), contends that defense counsel's two-sentence declaration—stating the undisputed facts that Defendant was sitting in his parked vehicle at the time of the arrest, and police officers searched his vehicle—was insufficient under Local Rule 12-1.1 and case law to raise a dispute of material fact.

As the Court previously found during the June 4th hearing, the declaration submitted by defense counsel not only fails to comply with Local Rule 12-1.1 but also does not raise a dispute of material fact to warrant an evidentiary hearing. The limited facts alleged in counsel's declaration are not in dispute, and Defendant did not request leave to amend or supplement counsel's declaration. The Ninth Circuit in *United States v. Wardlow* held that a broad declaration signed by counsel rather than an individual competent to testify concerning the facts in dispute is not sufficient to meet the requirements of Local Rule 9.2—the former rule preceding the current Local Rule 12-1.1. 951 F.2d 1115, 1116 (9th Cir. 1991). Additionally, the Ninth Circuit has upheld district courts' denial of evidentiary hearings, in part, based on failure to comply with Local Rule 12-1.1 or similar local rules within other district courts. *See United States v. Herrera-Rivera*, 832 F.3d 1166, 1173 (9th Cir. 2016) (following *Wardlow* and concluding that "defense counsel filed his own declaration stating that he believed the facts alleged in the motion were true, based on his conversations with [the defendant]. We have previously held that a declaration signed by counsel is insufficient to meet the requirements of the Central District of California's equivalent local rule, and we follow that holding today" (internal citation omitted)); *United States v. Schafer*, 625 F.3d 629, 636 n.3 (9th Cir. 2010) (emphasizing that the defendant's "factual statements were raised as unsworn arguments of defense counsel in their pleadings," such that the "district court would have been well within its rights to reject the request for an evidentiary hearing on this ground alone" (citing *Cohen v. United States*, 378 F.2d 751, 761 (9th Cir. 1967))).

Further, even if the Court were to base its decision about whether Defendant's briefing warrants an evidentiary hearing, as Defendant urges the Court to do, a careful

review of the briefing demonstrates that an evidentiary hearing is nonetheless not warranted. Contrary to Defendant's assertion, the Court does not find that the papers establish definite, specific, detailed, and nonconjectural disputes of fact meriting an evidentiary hearing. Instead, the Court agrees with the Government's assertion that Defendant's briefs merely challenge the legal basis for a probable cause finding and Detective Barretta's interpretation of and inferences drawn from the evidence available at the time of the arrest.[4] Stated differently, Defendant's briefs do not challenge material facts underlying probable cause for the arrest or the bases for the searches. For these reasons, the Court, in its discretion, declines to hold an evidentiary hearing on the Motion to Suppress the evidence.

### B.    Probable Cause to Arrest

Turning to the merits of the Motion, Defendant first contends that Detective Berretta and the arresting officers did not have probable cause to arrest him on January 17, 2024. Defendant's challenge to the Government's basis of probable cause primarily rests on the assertion that Detective Berretta could not have possibly identified from the video surveillance the getaway vehicle as a black four-dour BMW sedan. *See* (Mot. at 18–23).[5]

---

[4] The Court need not and does not rely on Detective Berretta's own interpretations and conclusions of the video surveillance footage, as proffered in his declaration, to assess probable cause for the arrest.

[5] Defendant also asserts that the cell-site data produced to Detective Berretta on January 17, 2024, could not have established probable cause because "Detective Berretta received hundreds of pages of data just a few hours before [Defendant] was arrested," thereby leaving Detective Berretta without sufficient time to meaningfully analyze or distill the data before the arrest. However, neither Detective Berretta's investigative report nor the Government's opposition states that law enforcement relied on the CSLI data to develop probable cause before arresting Defendant. Indeed, Detective Berretta's investigative report merely states that he had observed Defendant's phone number "being serviced by cellular towers in the general area of each of the crimes, on the day and at the approximate time of the crimes" and submitted this data to the "FBI CAST for analysis and mapping." (Berretta's Report at 8).

Defendant's challenge to the Government's basis for probable cause is insufficient for two reasons.  First, as to the video evidence, Defendant contests the clarity of the surveillance footage by presenting the still images from the footage.  The quality of still images, however, is much different than that of the surveillance footage and, based on the Court's independent review of the video surveillance, many clips from the surveillance— specifically, the Government's Exhibits D-3 and I-1—appear to show a black four-door BMW sedan departing from the scenes of the robberies.  Additionally, throughout the oral argument, defense counsel continued to assert that Detective Berretta's review of the surveillance could not identify the black BMW with "certainty" or "complete confidence." Such an assertion, however, contradicts Ninth Circuit precedent establishing that, "probable cause does not require a certainty, only a fair probability or a substantial chance that criminal activity took place." *United States v. Brooks*, 367 F.3d 1128, 1134 (9th Cir. 2004).

Second, the Government's basis for probable cause relies on far more than the still screenshots from the video surveillance presented in Defendant's Motion.  For example, based on the witnesses' statements describing all three robberies, Detective Berretta determined the suspect's physical appearance, clothing, and modus operandi.  As noted by the Government, *see* (Opp. at 9 n.1), the statements describe the suspect as a Hispanic male wearing a dark jacket and face covering.  *See* (ECF No. 25-4 at 3); (ECF No. 25-5 at 3); (ECF No. 25-6 at 3).  Additionally, the suspect brandished a silver handgun, demanding money from the restaurants' cashiers.  While one fact—i.e., the similarities between Defendant's vehicle and the getaway vehicle or the similarities between Defendant's appearance and the suspect's physical description—does not, in isolation, establish probable cause, the totality of the circumstances establish probable cause.  In sum, the Government has presented sufficient evidence supporting Detective Berretta's basis for probable cause to arrest Defendant.

1

## C.    First Search of the Vehicle

2    Next, Defendant asserts that the officers unlawfully searched his person and his

3 vehicle at the arrest scene and, therefore, the Court should suppress the fruits of this search.

4 The Government argues that the arresting officers lawfully searched both Defendant's

5 person under the search incident to arrest exception and his vehicle under the automobile

6 exception and search incident to arrest exception.

7    First, the Court finds that upon Defendant's arrest, the arresting officers lawfully

8 searched Defendant's person under the search incident to arrest doctrine.  *See U.S. v.*

9 *Edwards*, 415 U.S. 800, 802–03 (1974) (explaining that one of the Fourth Amendment

10 exceptions "permits warrantless searches incident to custodial arrests . . . and has

11 traditionally been justified by the reasonableness of searching for weapons, instruments of

12 escape, and evidence of crime when a person is taken into official custody and lawfully

13 detained" (internal citations omitted)).  Accordingly, the Court denies Defendant's request

14 to suppress the evidence seized from the search of his person.

15    Second, the Court also finds that the officers lawfully searched Defendant's vehicle

16 at the arrest scene under both the automobile exception and search incident to arrest

17 exception.  Starting with the former, "[u]nder the automobile exception to the warrant

18 requirement, police may conduct a warrantless search of a vehicle if there is probable cause

19 to believe that the vehicle contains evidence of a crime." *United States v. Brooks*, 610 F.3d

20 1186, 1193 (9th Cir. 2010).  The Ninth Circuit has emphasized that, "[b]ecause this

21 exception is justified by the exigency created by the inherent mobility of vehicles as well

22 as the relatively minimal expectation of privacy that exists with respect to automobiles, the

23 applicability of the automobile exception does not turn on whether the car's owner or driver

24 has already been taken into custody or the risk of mobility has otherwise been

25 eliminated . . . ." *Scott*, 705 F.3d at 417 (internal quotation marks and citation omitted).

26    Here, the arresting officers had probable cause to believe that Defendant's vehicle

27 contained evidence related to the robberies.  Again, from his investigation, Detective

28 Berretta discovered that the suspect wore similar clothing during the robberies, brandished

a silver handgun to commit the robberies, and most importantly, arrived at and fled from most of the robbery scenes in a black BMW as the getaway vehicle. Indeed, the crime alert not only informed law enforcement, including the arresting officers, that Defendant was wanted for several robberies but also provided, among other information, the suspect's modus operandi—i.e. entering the business, producing a stainless-steel handgun, demanding money, and fleeing in a black BMW sedan. The arresting officers therefore had probable cause to believe that at the arrest scene, Defendant's vehicle—serving as the getaway vehicle for most of the robberies—contained evidence of the arresting offenses.[6]

Similarly, the officers lawfully searched the vehicle at the arrest scene under the search incident to arrest doctrine. Under *Arizona v. Gant*, "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." 556 U.S. 332, 351 (2009). The Ninth Circuit, in turn, has interpreted the "reasonable to believe" standard in the search incident to arrest context as one that "appears to require a level of suspicion less than probable cause." *United States v. Rodgers*, 656 F.3d 1023, 1028 n.5 (9th Cir. 2011). For the reasons articulated above, the officers had probable cause—and certainly, a reasonable belief—that Defendant's getaway vehicle contained evidence of the robberies.

### D. Second Search of the Vehicle

Finally, Defendant contends that Detective Berretta unlawfully conducted a second search of the vehicle at the police station. On January 18th, the following day after the arrest, law enforcement transported Defendant's vehicle to the Foothill station, and Detective Berretta conducted a second search of the vehicle. *See* (ECF No. 35-16 at 17).

---

[6] Citing to no legal authority, Defendant posits that the evidence recovered by the officers—namely, the clothing, shoes, and weapon—are not items typically kept in a vehicle for weeks after a robbery. *See* (Reply at 13). Such a conclusory argument is not sufficient to support the Motion, especially given case law reaching a contrary conclusion. *See, e.g.*, *United States v. Henderson*, 241 F.3d 638 (9th Cir. 2000), *as amended* (Mar. 5, 2001).

Defendant challenges the lawfulness of second vehicle search, primarily contending that Detective Berretta's purported inventory search violated LAPD's inventory policy. As discussed during the hearing, however, the Court ultimately finds that Detective Berretta lawfully searched the impounded vehicle at the police station under the automobile exception. As the Government notes, impounding a vehicle does not automatically extinguish or negate an officer's authority to search a vehicle under the automobile exception. *See U.S. v. Henderson*, 241 F.3d 638, 648 (9th Cir. 2000). This is because, unlike the search incident to arrest exception, the automobile exception does not impose a strict temporal and spatial proximity between the underlying arrest and the search. *See United States v. Johns*, 469 U.S. 478, 484 (1985); *see also United States v. Camou*, 773 F.3d 932, 941–42 (9th Cir. 2014). Thus, the automobile exception permitted Detective Berretta to search the impounded vehicle, which LAPD held as evidence at the police station, the day after the arrest. Accordingly, the Court denies Defendant's Motion to Suppress the evidence recovered from the second search of his vehicle.

**IV.   CONCLUSION**

For the foregoing reasons, the Court DENIES the Motion.

**IT IS SO ORDERED.**

DATED:  July 1, 2025

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE